# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

JOY F. CLEMONS,

|                               |                        |
|-------------------------------|------------------------|
|                   Plaintiff,  |                        |
| v.                            | 5:16-CV-658 (ATB)      |
| COMMISSIONER OF SOCIAL SECURITY, |                     |
|                   Defendant.  |                        |

HOWARD D. OLINSKY, ESQ., for Plaintiff
ELIZABETH D. ROTHSTEIN, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 7).

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB") on November 30, 2012, and an application for Supplemental Security Income ("SSI") on December 7, 2012, each alleging disability beginning February 1, 2004. (Administrative Transcript ("T") at 19, 130-40).  The applications were denied initially on April 24, 2013. (T. 56-71).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 27, 2014. (T. 37-55).  On September 12, 2014, ALJ Barry E. Ryan found plaintiff was not disabled. (T. 16-36).  The ALJ's

decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on April 6, 2016. (T. 1-4).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the

2

> [Commissioner] will consider him disabled without considering
> vocational factors such as age, education, and work experience . . . .
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has the
> residual functional capacity to perform his past work. Finally, if the
> claimant is unable to perform his past work, the [Commissioner] then
> determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920. The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that her impairment prevents her from performing

her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence

supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin,*

*Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence

is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more

than a scintilla" of evidence scattered throughout the administrative record. *Id.*

However, this standard is a very deferential standard of review " – even more so than

the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from

both sides, because an analysis of the substantiality of the evidence must also include

that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. FACTS

As of the date of the administrative hearing on May 27, 2014, plaintiff was 55 years old. (T. 41). Plaintiff was a high school graduate, who had attended special education classes due to difficulties with reading and writing. (T. 41-42). She resided with her adult daughter and four grandchildren, who ranged in age from 12 to 17. (T. 309).

Plaintiff's previous employment included work as an office cleaner, retail employee, and day care provider. (T. 181). Plaintiff's longest employment was as a food service worker with the City of Syracuse School District, a position she held for approximately sixteen years. (*Id*.). Plaintiff testified that she left this position after

4

back pain, resulting from a car accident, made it difficult for her to meet the job's physical requirements. (T. 44).

Plaintiff had a lengthy history of Type II diabetes and hypertension, but reported that she was inconsistent with her insulin and blood pressure medication. (T. 313, 362, 368-69). She also suffered joint and muscle pain that was consistent with fibromyalgia. (T. 455). Plaintiff's treating physicians had recommended both pain medication and low-impact exercises to alleviate some of her pain. (T. 455). Plaintiff was inconsistent with this treatment protocol as well, which she attributed, in part, to her depression. (T. 806, 822). Plaintiff received intermittent mental health treatment since 2002, and began attending counseling on a regular basis in 2013. (T. 368, 669-70, 691-92).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 23-29). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.   THE ALJ'S DECISION

As an initial matter, the ALJ determined that plaintiff met the insured status requirements for DIB through December 31, 2008. (T. 20, 22). Plaintiff had previous DIB and SSI applications denied in a determination dated November 9, 2009, which she did not appeal. Because the prior DIB determination was made after her date last insured, the ALJ found that plaintiff's November 30, 2012 DIB application was barred by the doctrine of administrative res judicata. (T. 20). The ALJ then considered plaintiff's SSI application, and whether she was disabled since November 10, 2009, the

date after the prior, final determinations that plaintiff was not disabled.

The ALJ found that plaintiff had not engaged in substantial gainful activity since November 10, 2009. (T. 22). Next, the ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: diabetic neuropathy, hypertension, fibromyalgia, degenerative changes of the lumbar spine, and depression. (T. 23-25). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 25-26).

The ALJ found at step four of the analysis that plaintiff had the RFC to perform light work that only required understanding, carrying out, and remembering simple instructions. (T. 29-30). In assessing plaintiff's mental impairments, the ALJ concluded that plaintiff was able to respond appropriately to supervision, coworkers, and usual work situations, and could deal with changes in a routine work setting. (T. 26). In making the RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Rulings ("SSRs") 96-4p and 96-7p. (*Id.*). Finally, the ALJ stated that he considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id.*).

The ALJ also found that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were "only partially credible" in

light of the record evidence.  (T. 29).  The ALJ then determined that plaintiff was capable of performing her past relevant work in food service preparation, as actually performed. (T. 30).  Accordingly, the ALJ decided that plaintiff was not disabled from November 10, 2009, through the date of the decision.  (*Id*.).

## V.   ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1.   The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical opinions and other evidence. (Pl.'s Br. at 9-12) (Dkt. No. 10).

2   The ALJ's credibility finding was not supported by substantial evidence. (Pl.'s Br. at 13-14).

3.   The ALJ failed to fully and fairly develop the record. (T. 12-13).

4.   The ALJ's step four determination that plaintiff was capable of performing her past relevant work was not supported by substantial evidence. (Pl.'s Br. at 15).

Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Def.'s Br. at 5-15) (Dkt. No. 11).  For the following reasons, this court agrees with the defendant and will recommend dismissing the complaint.

## DISCUSSION

## VI.   RFC EVALUATION/TREATING PHYSICIAN

### A.   Legal Standards

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations.

7

Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical

opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran v. Barnhart*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### B.    Application

It is the province of the ALJ to resolve genuine conflicts in the record. *Veino v. Barnhart*, 312 F.3d at 588. However, the Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)). Here, the ALJ resolved conflicts between the various medical opinions and the treatment record by assigning the greatest weight to those findings that he deemed most consistent with plaintiff's overall treatment record and activities. In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding that was consistent with the overall record. *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole). In light of the ALJ's detailed analysis of plaintiff's medical history, the relevant medical opinions, and

plaintiff's activities of daily living, this court concludes that his RFC determination was supported by substantial evidence, as summarized below.

### 1. Physical Limitations

Plaintiff contends that the ALJ did not properly account for the functional limitations imposed by plaintiff's chronic fibromyalgia pain, and thus erred in finding that plaintiff was capable of meeting the physical requirements of light work. (Pl.'s Br. at 11-12). This court disagrees, and concludes that the ALJ's RFC assessment of plaintiff's physical impairments was supported by substantial evidence.

In reaching his RFC determination regarding plaintiff's physical limitations, the ALJ gave "significant weight" to the opinion of Dr. Kalyani Ganesh, who performed a consultative examination of plaintiff on March 27, 2013. (T. 27, 313-15). Based on that examination, Dr. Ganesh opined that plaintiff had no gross physical limitations for sitting, standing, walking, or the use of her upper extremities. (T. 315). The ALJ concluded that this opinion was generally consistent with the record evidence, which showed that plaintiff's physical symptoms were stable when she was compliant with treatment. (T. 27). However, the ALJ did not fully adopt Dr. Ganesh's opinion that plaintiff had no exertional limitations. Instead, the ALJ found that plaintiff was limited to light work, due to diagnostic imaging results and other evidence that showed that plaintiff had some limitations with regards to lifting and carrying. (T. 27, 354-55, 361, 532).

During the consultative examination, Dr. Ganesh questioned plaintiff about her history of lower back pain, fibromyalgia, and her admitted non-compliance with

prescribed pain medication. (T. 313). Dr. Ganesh observed that plaintiff appeared to be in no acute distress during the consultative examination. (T. 314). Plaintiff was able to walk on heels and toes without difficulty, and displayed a normal gait and stance. (*Id.*). She did not require any assistive devices, did not need help changing for the examination or getting on and off the examination table, and could rise from a chair without difficulty. (*Id.*).

Plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally during the consultative examination. (*Id.*). Her lumbar spine showed some impairment, with flexion of 60 degrees, extension of 50 degrees, and lateral flexion of 10 degrees. (*Id.*). Plaintiff had full range of motion in the shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally. (*Id.*). Dr. Ganesh also found full strength in plaintiff's upper and lower extremities. (*Id.*). Plaintiff's hand and finger dexterity were intact, and she showed full grip strength bilaterally. (*Id.*).

There were no treating source opinions in the record, so the ALJ evaluated Dr. Ganesh's examination findings and medical opinion in the context of plaintiff's treatment records. (T. 27, 29). The ALJ noted that diagnostic imaging results, which showed degenerative changes in the L3-L4 vertebrae and arthritic changes in plaintiff's shoulders, supported plaintiff's statements that she had some functional limitations with lifting and carrying. (T. 27, 54, 233, 317, 435, 532). Otherwise, the ALJ found that plaintiff's treatment record indicated that she was capable of performing the exertional requirements of light work. (T. 27). Plaintiff had a lengthy history of diabetes and

hypertension, but treatment notes indicated that the associated symptoms were well-controlled when plaintiff consistently checked her insulin levels and took her blood pressure medication in compliance with her physician's instructions. (T. 27, 362, 449-50, 627, 791). Likewise, plaintiff's back and shoulder pain showed improvement after physical therapy and treatment. (T. 421, 427, 499, 503, 554). Plaintiff's fibromyalgia symptoms also showed improvement with medication, and her physician recommended that plaintiff engage in low-impact aerobic exercises. (T. 503, 511, 516).

The ALJ also supported his conclusion that plaintiff could perform light work by assessing plaintiff's activities of daily living. (T. 24). Plaintiff reported that she was "fairly active" with her four grandchildren, and had acted as an informal foster parent for most of their lives. (T. 369-70, 409, 511). She had also provided daycare services to two other young children in her home for approximately three years, ending in February 2013. (T. 42-43, 309). In March 2013, plaintiff reported that her activities of daily living included cooking, light cleaning, doing laundry, shopping, and using public transportation. (T. 311). Because the ALJ adequately explained his rationale for concluding that plaintiff could perform light work, this court concludes that the ALJ's physical RFC determination was supported by substantial evidence.

## 2.   Mental Limitations

As noted above, the ALJ limited plaintiff to work that involved simple instructions. (T. 26). Plaintiff argues that the ALJ did not properly weigh the medical evidence regarding plaintiff's mental impairments, particularly the evidence regarding plaintiff's ability to manage stress. (Pl.'s Br. at 12). This court disagrees, and

concludes that the ALJ's assessment of plaintiff's mental impairments was supported by substantial evidence.

In reaching the mental RFC determination, the ALJ gave "great weight" to the March 27, 2013 opinion of Dr. Dennis Noia, who performed a consultative psychiatric examination. (T. 28). Dr. Noia opined that plaintiff appeared capable of understanding and following simple instructions and directions, and that she was capable of performing simple and some complex tasks, both with supervision and independently. (T. 311-12). In his opinion, plaintiff was capable of maintaining attention and concentration for tasks, and could maintain a regular schedule, learn new tasks, and make appropriate decisions. (T. 312.). Dr. Noia also opined that plaintiff appeared able to relate to, and interact moderately well with others, but had "mild to moderate" limitations in her ability to deal with stress. (*Id*.).

The fact that plaintiff might have some difficulty handling stress does not automatically preclude simple work. *Cheek v. Comm'r of Soc. Sec.*, No. 5:14-CV-482 (TJM/ATB), 2015 WL 3857253, at *13 (N.D.N.Y. June 22, 2015). When "determining whether [mentally impaired] individuals will be able to adapt to the demands or 'stress' of the workplace," the ALJ is required to make a thorough, individualized evaluation, focusing on the individual's ability to "understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *See Petrie v. Astrue*, No. 5:08-CV-1289 (GLS/VEB), 2010 WL 1063836, at *2 (N.D.N.Y. Mar. 19, 2010) (quoting SSR 85-15, 1985 WL 56857, at *4, 5), *aff'd* 412 F. App'x 401 (2d Cir. 2011).

13

The ALJ made the necessary inquiry in this case. First, the ALJ relied upon Dr. Noia's opinion, which included his findings regarding plaintiff's ability to follow instructions, respond to questions, and relate to others. (T. 310). The ALJ also considered plaintiff's minimal psychiatric treatment history. (T. 29). Plaintiff received irregular psychiatric treatment between 2005 and 2014. Multiple treatment providers found that her mood, affect, attentiveness, judgment, and behavior were in the normal range during that time. (T. 29, 261, 269, 571, 669, 679, 828). During her most recent counseling sessions, plaintiff acknowledged that her primary sources of stress were her lack of income and disagreements within her family. (T. 674, 676, 682). None of her treatment providers expressed concerns about plaintiff's ability to manage stress in the workplace. Accordingly, although the ALJ did not explicitly mention plaintiff's ability to manage stress in his RFC determination, his ultimate conclusion that plaintiff could perform simple tasks adequately addressed any limitations that plaintiff had in this functional area.

## VII. CREDIBILITY

### A. Legal Standards

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the

substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 416.929; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. § 416.929(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to function. 20 C.F.R. § 416.929(c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 416.929(c)(3).

## B. Application

The ALJ found that plaintiff's testimony with regard to the functional limitations imposed by her impairments was not entirely credible, for several reasons: plaintiff's

15

lack of compliance with prescribed treatment; the documented improvement that resulted when plaintiff did follow treatment instructions; and plaintiff's broad range of daily activities. (T. 29). Plaintiff contends that the ALJ failed to adequately support this credibility determination because he ignored the legitimate justification for plaintiff's noncompliance with treatment instructions. (Pl.'s Br. at 14-15).

An ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment without first considering "any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *See* SSR 96-7p*, 1996 WL 174186, at *8 (July 2, 1996)[1]. Therefore, the ALJ erred by failing to evaluate the reasons for plaintiff's non-compliance with her physician's instructions.[2] However, in light of the multiple other factors that the ALJ relied upon in his credibility assessment, this error was harmless. *See Harris v. Colvin*, No. 5:15-CV-938, 2016 WL 6426387, at *11 (N.D.N.Y. Oct. 28, 2016) (concluding that ALJ's failure to assess reasons for noncompliance with mental health treatment was harmless error because the ALJ did not base the credibility assessment on that one factor alone).

As part of his credibility assessment, the ALJ summarized the objective medical

---

[1] SSR 96-7p was superseded by SSR 16-3p, which became effective March 28, 2016, after the date of plaintiff's administrative hearing. The new ruling contains a similar requirement that the ALJ evaluate the reasons why an individual did not seek or comply with medical treatment. SSR 16-3p, 2016 WL 1119029, at *2 (March 16, 2016).

[2] Moreover, some of plaintiff's treatment notes reflect that her treatment was complicated by depression symptoms. (T. 370, 547, 654, 806, 822). Reviewing courts have found that faulting a person with diagnosed mental illness for failing to pursue treatment is a "questionable practice." *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 207 (N.D.N.Y. 2012) (quoting *Day v Astrue*, No. 07-CV-157, 2008 WL 63285, at *5, n. 6 (E.D.N.Y. Jan. 3, 2008)).

evidence that contradicted plaintiff's claims of significant physical and mental

functional limitations. (T. 27-29, 269, 314, 378). The ALJ also considered the

treatment notes that showed plaintiff's physical and mental impairments responded well

to treatment. (T. 29, 503, 554, 683). In addition, the ALJ reviewed the "broad range" of

plaintiff's daily activities, as well as other activities that suggested a greater degree of

physical and mental functioning, such as plaintiff's operation of a daycare service out

of her home until 2013, and her search for independent housing after conflicts with her

daughter in 2014. (T. 29, 42-43, 313, 674). Accordingly, the ALJ's credibility

determination was still supported by substantial evidence despite his insufficient

consideration of the reasons for plaintiff's noncompliance with prescribed treatment.

*Schlichting v. Astrue*, 11 F. Supp. 3d 190, 206-207 (N.D.N.Y. 2012) (adverse inference

from plaintiff's failure to pursue treatment was harmless error when credibility analysis

was otherwise supported by substantial evidence).

## VIII. <u>FAILURE TO DEVELOP THE RECORD</u>

### A.    Legal Standards

Given the remedial intent of the Social Security statute and the non-adversarial

nature of benefits proceedings, an ALJ has an affirmative duty, even if the claimant is

represented by counsel, to develop the medical record if it is incomplete. *Tejada v.*

*Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); *Batista v. Barnhart*, 326 F. Supp. 2d 345, 353

(E.D.N.Y. 2004) (although an ALJ's obligation to develop the record is heightened

where the claimant appears pro se, the duty still exists even where the claimant is

represented by counsel during the administrative proceedings); 20 C.F.R. §§

404.1512(d), 416.912(d) ("We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports."). Furthermore, "[t]he duty of an ALJ to develop the record is 'particularly important' when obtaining information from a claimant's treating physician due to the 'treating physician' provisions in the regulations." *Dickson v. Astrue*, No. 1:06-CV-511 (NAM/GHL), 2008 WL 4287389, at *13 (N.D.N.Y. Sept.17, 2008) (citing *Devora v. Barnhart*, 205 F. Supp. 2d 164, 172 (S.D.N.Y.2002)).

In furtherance of the duty to develop the record, an ALJ may recontact medical sources if the evidence received from the treating physician or other medical sources is inadequate to determine disability, and additional information is needed to reach a determination. 20 C.F.R. § 416.912(d). Although the ALJ must attempt to fill in any "clear gaps" in the administrative record, "where there are no obvious gaps . . . and where the ALJ already possesses a 'complete medical history,'" the ALJ is under no obligation to seek additional information. *Rosa v. Callahan*, 168 F.3d 72, 79, n. 5 (2d Cir. 1999).

## B.    Application

Plaintiff contends that the ALJ failed to adequately develop the record by failing to follow up on a January 15, 2014 treatment note from one of plaintiff's treating physicians, Dr. Hom Neupane. (Pl.'s Br. at 13). During this visit, plaintiff reported that pain caused continuing functional limitations, including difficulty with climbing stairs or rising from a seated position. (T. 511). Dr. Neupane's contemporaneous examination notes show reduced range of motion and decreased strength in plaintiff's

shoulders, as well as tenderness in plaintiff's back and knees. (T. 514-15). Due to the apparent conflict between Dr. Neupane's January 2014 findings and Dr. Ganesh's March 27, 2013 consultative examination report, plaintiff argues that the ALJ should have either requested a treating source statement from Dr. Neupane or ordered a new consultative examination. This court concludes that the ALJ was under no obligation to take either action.

The ALJ's decision makes several references to Dr. Neupane's treatment notes, and the ALJ did not dispute the physician's findings that plaintiff suffered from pain attributable to fibromyalgia and other impairments. (T. 25, 27-28). However, the ALJ also relied on Dr. Neupane's treatment notes to conclude that plaintiff's symptoms improved with pain medication and treatment. (T. 28, 503). Because the ALJ had adequate evidence to reach a conclusion regarding Dr. Neupane's findings and the overall question of disability, he was under no obligation to develop the record further. *See Aldrich v. Astrue*, 5:08-CV-402, 2009 WL 3165726, at *7 (N.D.N.Y. Sept. 28, 2009) (a treating physician is recontacted only in situations where the evidence from treating or other medical sources is insufficient for the ALJ to determine whether a claimant is disabled).

## IX.    PAST RELEVANT WORK

### A.    Legal Standard

At step four of the analysis, the ALJ must address a claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that a claimant has performed in the past 15 years and that constituted substantial gainful activity. 20

C.F.R. § 404.1565(a), (b). If the claimant can return to his past relevant work, the Commissioner will find that he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). Where substantial evidence supports the ALJ's conclusions as to whether plaintiff's RFC allows plaintiff to perform his past relevant work, it is unnecessary to remand the case for further development of the record. *See Stenoski v. Comm'r of Social Security*, No. 7:07-CV-552, 2010 WL 985367, at *6 (N.D.N.Y. Mar. 16, 2010). Plaintiff "has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (citation and emphasis omitted). This determination requires consideration of: 1) an individual's statements as to which past work requirements can no longer be met and the reason(s) for his inability to meet those requirements; 2) medical evidence establishing how the impairment limits the ability to meet the physical and mental requirements of the work; and 3) in some cases, supplementary or corroborative information from other sources such as the DOT on the requirements of the work as generally performed in the economy. *Speruggia v. Astrue* No. 05-CV-3532, 2008 WL 818004, at *12-13 (E.D.N.Y. Mar. 26, 2008).

## B.    Analysis

The ALJ found that plaintiff could return to her past relevant work in food service preparation, as actually performed.[3] (T. 30). Plaintiff contends that the ALJ

---

[3] After finding that plaintiff could perform her past relevant work, the ALJ did not reach step five of the analysis. As plaintiff's counsel correctly notes, an individual of "advanced age" (55 and over), with plaintiff's education level and history of only unskilled work, who had an RFC of light work, and who could not return to prior work, would be considered disabled under the applicable Medical-Vocational Guidelines due to anticipated difficulties transitioning to new

failed to properly evaluate plaintiff's testimony that she could not return to her previous work in food service because of pain in her back and legs, and difficulties with lifting. (T. 54). This court disagrees.

Plaintiff provided details of her prior employment as a food service worker with the City of Syracuse School District as part of her benefit applications. (T. 182). Plaintiff reported that she worked five days per week, and typically walked or stood for six total hours per day. (T. 182). The heaviest weight she was required to lift was ten pounds. (*Id.*). She was not required to supervise others as part of her job duties. (*Id.*). At the hearing, the ALJ sought further information, and questioned plaintiff about her basic duties and responsibilities during the approximately sixteen years that she held this job. (T. 43-44). He also consulted the Dictionary of Occupational Titles, which characterized the position as unskilled. (T. 30). Based upon this information, the ALJ had substantial evidence to conclude that the duties of food service worker, as actually performed by plaintiff, were consistent with an RFC of light work that required only the ability to respond to simple instructions. (T. 30).

Plaintiff further contends that the ALJ should have consulted a vocational expert to testify as to whether plaintiff's non-exertional limitations prevented her from returning to her prior work. At step four of the analysis, the ALJ is not required to consult a vocational expert. *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) ("A vocational expert or specialist *may* offer expert opinion testimony . . . about whether a

---

vocational tasks. *See* 20 C.F.R. Pt. 404, Subpart P, App. 2, Rule 202.04. Therefore, if the ALJ had found that plaintiff was unable to perform her prior work, he would likely have also found at step five that plaintiff was disabled as of July 6, 2013, when plaintiff turned 55 years old.

person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.") (emphasis added). Therefore, the ALJ's determination that plaintiff's RFC would allow her to perform her past relevant work in food service preparation, as actually performed, was supported by substantial evidence. Accordingly, this court affirms the ALJ's ultimate determination that plaintiff was not disabled.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for the **DEFENDANT.**


Dated:      February 27, 2017

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**